# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
April 21, 2022

Lyle W. Cayce
Clerk

No. 21-30055

Lesley Ann Saketkoo, Medical Doctor, Master of Public Health,

*Plaintiff—Appellant*,

*versus*

Administrators of the Tulane Educational Fund,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:19-CV-12578

Before Stewart, Ho, and Engelhardt, *Circuit Judges*.

Carl E. Stewart, *Circuit Judge*:

In this employment discrimination suit, Dr. Lesley Ann Saketkoo challenges the district court's summary judgment in favor of the Administrators of the Tulane Educational Fund ("the Administrators"). According to Dr. Saketkoo, the district court erred in dismissing her claims

No. 21-30055

for gender discrimination,[1] retaliation, and hostile work environment under Title VII of the Civil Rights Act of 1964 ("Title VII"). Because we identify no genuine material factual dispute as to her claims, we affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2014, Dr. Saketkoo accepted a clinical appointment as an associate professor at Tulane's School of Medicine ("the School"). Her one-year contract was continually renewed until 2019. She was initially hired into the School's Allergy and Immunology Section and transferred to the Pulmonary Section in 2017. Prior to her transfer, Dr. Saketkoo's supervisor was Dr. Laurianne Wild, Chief of the Allergy and Immunology Section. After her transfer, her supervisor was Dr. Joseph Lasky, Chief of the Pulmonary Section and a doctor with whom she had previously worked. According to Dr. Saketkoo, Dr. Lasky mistreated her throughout her time at the School, and the bulk of her claims arise from interactions with him.

First, Dr. Saketkoo accuses Dr. Lasky of discriminatory treatment by failing to support her research as her supervisor. Specifically, she alleges that: (1) he excluded her from a research opportunity that she brought to him, only to assign a male physician to the principal investigator role; (2) he did not allow her to move a study forward when he allowed a male physician to move

---

[1] As the district court observed, "[b]oth parties refer to this claim as a claim of '[g]ender [d]iscrimination' rather than disparate treatment," though that is the form of unlawful employment discrimination at issue. *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 335 n.15 (1977) ("'Disparate treatment' . . . is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national origin . . . Claims of disparate treatment may be distinguished from claims that stress 'disparate impact.' The latter involve employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity.").

a study forward; and (3) he used funding from one of her research grants to support other personnel.

Next, Dr. Saketkoo recounts several instances in which Dr. Lasky ridiculed her, such as when she suggested clinic changes, asked about compensation, and explained new research topics. She notes that Dr. Lasky called other women "very difficult to work with" and the "enemy." She also claims that a female physician who she found crying after an interaction with Dr. Lasky confided in her that he "does this to strong women."

Finally, Dr. Saketkoo describes an incident in September 2018 where Dr. Lasky berated her for failing to disclose that she was teaching an undergraduate class. According to Dr. Saketkoo, she replied that she had already told him about it, and Dr. Lasky proceeded to demand that they discuss the matter further. She attests that she was so intimidated by his conduct that she ended the conversation and walked away. Following this incident, Dr. Saketkoo complained about Dr. Lasky and her toxic work environment to other doctors in her section and Tulane's Office of Institutional Equity ("OIE"). She also complained to three superiors, including Dr. Wild.

In February 2019, Dr. Saketkoo met with Dr. Lee Hamm, Dean of the School, and learned that her employment contract would not be renewed. Dean Hamm explained that the decision had been made because she was not earning enough to pay her salary. In this meeting, Dr. Saketkoo expressly raised concerns that Dr. Lasky had discriminated against her and other women on the basis of gender. Dean Hamm told her that the behavior would be investigated but this would not change the decision on her contract. The OIE subsequently began an investigation, and Dr. Saketkoo ceased to be an associate professor at the School that June.

Meanwhile, Dr. Saketkoo alleges that sometime thereafter Dean Hamm told Dr. Nirav Patel not to hire her at the University Medical Center ("UMC"). In a September 2019 phone call that Dr. Saketkoo surreptitiously recorded, Dr. Patel told her, "if Dean Hamm comes and says Patel don't hire this person, this person explicitly . . . by name . . . you know that's a pretty clear directive." According to Dr. Patel's affidavit, he "remember[s] a conversation with Dean Hamm in the summer of 2019" and "remember[s] . . . [he] made statements that implied that Dean Hamm told [him] not to hire Dr. Saketkoo." However, "Dean Hamm did not at any time tell [him] not to hire Dr. Saketkoo, nor did [Dean Hamm] ever request that [Dr. Patel] not hire her." Rather, "[Dr. Patel] made these statements because it would not be appropriate, nor was it necessary, for UMC to act contrary to the decisions of Tulane, one of [its] faculty practice partners."

Shortly after this phone call, Dr. Saketkoo filed suit in federal district court against the Administrators, the School, Dean Hamm, and Dr. Lasky, asserting claims under Title VII, the Equal Pay Act, and corresponding state law. She voluntarily dismissed her state law claims, and the School, Dean Hamm, and Dr. Lasky were dismissed as defendants by stipulation. In December 2020, the district court granted summary judgment in favor of the Administrators, holding that Dr. Saketkoo did not make a successful prima facie case of gender discrimination, retaliation, and hostile work environment. She now appeals the judgment as to her Title VII claims.[2]

## II. STANDARD OF REVIEW

We review a district court's grant of summary judgment de novo. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). "The

---

[2] Dr. Saketkoo did not appeal the district court's summary judgment in favor of the Administrators on her Equal Pay Act claim.

court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id.*

## III. DISCUSSION

Dr. Saketkoo argues that the district court erroneously entered summary judgment in favor of the Administrators on her gender discrimination, retaliation, and hostile work environment claims. We discuss each in turn.

### A. Gender Discrimination

Under Title VII, it is unlawful to discriminate against an employee on the basis of sex. 42 U.S.C. § 2000e–2(a). In a disparate treatment case, an employee must establish that her employer had a discriminatory intent or motive for taking a job-related action. *Ricci v. DeStefano*, 557 U.S. 557, 577 (2009). As direct evidence of discriminatory intent is rare, an employee ordinarily proves her claim through circumstantial evidence. *Scales v. Slater*, 181 F.3d 703, 709 (5th Cir. 1999). When an employee offers circumstantial evidence, we carry out the burden-shifting analysis introduced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which first requires the employee to establish a prima facie case of discrimination. *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001).

In *McDonnell Douglas*, the Supreme Court set out "an appropriate model for a prima facie case of racial discrimination." *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 n.6 (1981). In doing so, it observed that "the prima facie proof required from respondent is not necessarily applicable

in every respect to differing factual situations." *McDonnell Douglas*, 411 U.S. at 802 n.13; *see also Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012) ("The prima facie case is necessarily a flexible standard that must be adapted to the factual circumstances of the case."). Although the ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153 (2000), the precise formulation for making a prima facie case can vary by circuit and, more granularly, by protected class and adverse employment action.

To establish a prima facie case of sex discrimination based on disparate treatment in the Fifth Circuit, an employee generally must demonstrate that "(1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably." *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). To satisfy the "similarly situated" prong, the employee carries out a comparator analysis. *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253 (5th Cir. 2009).[3] Under this analysis, the employee must establish that she was treated less favorably than a similarly situated employee outside of her protected class in nearly identical circumstances. *See id.* at 259–60 (citing *McDonnell Douglas*, 411 U.S. at 802). The similarly situated employee is known as a comparator. "A variety of factors are considered when determining whether a comparator is

---

[3] *Lee* sets out the requirements for conducting the comparator analysis. Although it does not affirmatively state that such an analysis is required to satisfy the fourth prong and make a prima facie case, our court has since interpreted *Lee* this way. *See, e.g.*, *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) ("The 'similarly situated' prong requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably 'under nearly identical circumstances.'" (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009))).

similarly situated, including job responsibility, experience, and qualifications." *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018). Moreover, we require an employee to show that the comparator's conduct is "nearly identical," not strictly identical.[4] *Lee*, 574 F.3d at 260 n.25.

On appeal, Dr. Saketkoo argues that the district court improperly required her to demonstrate that her proffered comparators were strictly identical. We disagree. The district court applied the correct standard, but Dr. Saketkoo failed to present evidence that any male physicians shared her research responsibilities, section assignments, historical performances, or other attributes that would render them similarly situated.

At the School, each faculty member is required to earn her salary by generating revenue at least equal to it, and whether she can generate such revenue is an important factor in renewal decisions. Dr. Saketkoo emphasizes that there were several male physicians supervised by Dr. Lasky who were not earning enough to pay their salaries and that she was the only one whose contract was not renewed for this reason.[5] However, as she acknowledges, it

---

[4] *Compare Lee*, 574 F.3d at 260, *with Coleman v. Donahoe*, 667 F.3d 835, 846 (7th Cir. 2012) (quoting *Humphries v. CBOCS W., Inc.*, 474 F.3d 387, 405 (7th Cir. 2009) ("So long as the distinctions between the plaintiff and the proposed comparators are not 'so significant that they render the comparison effectively useless,' the similarly-situated requirement is satisfied.")), *and Lewis v. City of Union City*, 918 F.3d 1213, 1218 (11th Cir. 2019) (en banc) (rejecting the Seventh Circuit's standard and holding that a plaintiff must demonstrate that she and her proffered comparators were "similarly situated in all material respects").

[5] She also argues that her "expected deficits" were less than those of male physicians in the Pulmonary Section. For instance, according to Dr. Saketkoo, one male physician had an expected deficit of $95,586 for 2017–18, whereas she had an expected deficit of $71,897.

is common for physicians in the Department of Medicine to run deficits.[6] Moreover, many physicians run deficits in some years but not others, whereas Dr. Saketkoo ran a deficit every year of her employment at the School. The fact that male physicians under Dr. Lasky's supervision were at some point expected to run a deficit is not sufficient to render their experiences nearly identical in the field of academic medicine—especially when, as the district court determined, "[Dr.] Saketkoo has offered the [c]ourt no explanation as to why these individuals, despite their disparate job titles and presumably different responsibilities, are appropriate comparators."

We therefore agree with the district court that the male physicians Dr. Saketkoo presented were not valid comparators for establishing a prima facie case, and she has not otherwise demonstrated that she was discriminated against because of her sex. *See Rutherford v. Harris Cnty.*, 197 F.3d 173, 179 (5th Cir. 1999); *see also Dileo v. Ashcroft*, 201 F. App'x 190, 191 (5th Cir. 2006) (per curiam) (holding that comparator evidence was insufficient to establish a prima facie case of sex discrimination and "[a]s [the plaintiff] did not present any other evidence sufficient to raise a genuine issue of material fact, summary judgment was proper").

Even if Dr. Saketkoo had established a prima facie case of sex discrimination, her claim would fail because she did not rebut the Administrators' legitimate, non-discriminatory reasons for declining to renew her contract. It is well-established that after an employee makes a prima facie case under the *McDonnell Douglas* framework, the burden of production shifts to the employer to offer an alternative non-discriminatory explanation for the adverse employment action, at which point the employee must show that this

---

[6] In support of this proposition, she cites the testimony of Department of Medicine Vice Chair, Dr. Vecihi Batuman.

explanation is pretextual. *See Lee*, 574 F.3d at 259 (citing *McDonnell Douglas*, 411 U.S. at 802). Notably, the burden of proof remains with the employee throughout. *See id.* at 259 n.13; *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 518 (1993) (quoting *Burdine*, 450 U.S. at 253 ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.")).

Here, Dr. Saketkoo failed to meet this burden. The Administrators explained that they have a policy of retaining physicians operating at deficits who are heavily involved in medical education and mission-critical practices, including several male physicians she identified as comparators. Further, they emphasized that "the sub-subspecialty of rheumatology that Dr. Saketkoo prefers to practice is not mission[-]critical to Tulane Medical School." Although Dr. Saketkoo addressed the Administrators' allegations of performance issues, attaching several declarations to contradict the suggestion that she was "disruptive," she did not rebut the Administrators' contention that other physicians operating at deficits added value in ways that she did not. Thus, she did not demonstrate that the Administrators' non-discriminatory reasons were pretextual.

Accordingly, we affirm summary judgment in favor of the Administrators on Dr. Saketkoo's gender discrimination claim.

## B. Retaliation

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e–3(a)). "The allocation of the burden of proof in Title VII retaliation cases depends on the nature of the plaintiff's evidence

supporting the causation element." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (quoting *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 191 (5th Cir. 2001)). "Where, as here, the plaintiff[] seek[s] to prove causation by circumstantial evidence, [she] carr[ies] the initial burden of establishing a prima facie case of retaliation," and the retaliation claim is analyzed under a *McDonnell Douglas* burden-shifting framework. *Id.*; *Wheat v. Fla. Par. Juv. Just. Comm'n*, 811 F.3d 702, 705 (5th Cir. 2016).

To establish a prima facie case of retaliation, an employee must show "(1) she engaged in a protected activity; (2) 'she suffered an adverse employment action'; and (3) 'a causal connection exists between the protected activity and the adverse employment action.'" *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020) (quoting *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000)). "If the plaintiff establishes a prima facie case, then the employer has the burden of production to provide 'a legitimate, non-discriminatory reason' for the adverse employment action." *Id.* (quoting *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004)). "If the employer meets this burden, then the plaintiff has the burden to prove that the proffered reason is pretextual." *Id.* Again, the burden of persuasion remains with the employee throughout. *See id.*

### i.    Contract Non-Renewal

On appeal, Dr. Saketkoo's first allegation of retaliation relates to the Administrators' decision not to renew her contract. She argues that they made this decision in retaliation for her complaining about Dr. Lasky's discriminatory behavior. Yet nothing in the record supports the claim that she reported his behavior as discriminatory before the Administrators made the decision not to renew her contract. "In a claim of protected opposition, an employee must at least have referred to conduct that could plausibly be considered discriminatory in intent or effect, thereby alerting the employer of its

discriminatory practices." *Allen v. Envirogreen Landscape Pros., Inc.*, 721 F. App'x 322, 326 (5th Cir. 2017) (per curiam). A general allegation of hostility is not enough. *Id.*

Although Dr. Saketkoo contacted the OIE after Dr. Lasky's alleged outburst in September 2018, she did not file a report or otherwise communicate that she was being discriminated against based on her gender. Similarly, the record reflects that she described his behavior to her superiors as regrettably harsh, not as potentially discriminatory. In her declaration, Dr. Saketkoo stated that she "reported [to Dr. Wild] what [Dr. Lasky] did and his continuing abusive treatment." Meanwhile, she told others that he was "out of control," "not approachable," and "untenable." She did not, however, allege that she complained about experiencing gender-based discrimination sufficient to put the Administrators on notice. The first time Dr. Saketkoo notified the Administrators of Dr. Lasky's potential discrimination was during her conversation with Dean Hamm in February 2019, after he had told her that her contract would not be renewed. Because there is no evidence that Dr. Saketkoo engaged in protected activity before this decision, she has failed to make a prima facie case of retaliation with respect to her contract non-renewal.

### ii.    Conversation Between Dean Hamm and Dr. Patel

Dr. Saketkoo's second allegation of retaliation relates to the conversation in which Dean Hamm allegedly directed Dr. Patel not to hire her. She argues that the Administrators retaliated against her by sabotaging her attempt to secure employment at UMC. Both parties agree that Dr. Saketkoo's comments during the February 2019 meeting and the OIE investigation that followed were protected activities. And reading the facts in the light most favorable to Dr. Saketkoo, the conversation between Dean Hamm and Dr. Patel was an adverse employment action. This leaves the question of whether

there was a causal link between the two as required to make a prima facie case of retaliation.

"At first glance, the ultimate issue in an unlawful retaliation case—whether the defendant discriminated against the plaintiff because the plaintiff engaged in conduct protected by Title VII—seems identical to the third element of the plaintiff's prima facie case—whether a causal link exists between the adverse employment action and the protected activity." *Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996) (emphases omitted). "However, the standards of proof applicable to these questions differ significantly." *Id.* "The ultimate determination in an unlawful retaliation case is whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Id.* "The standard for establishing the 'causal link' element of the plaintiff's prima facie case is much less stringent." *Id.*

To demonstrate that a causal link exists between the protected activity and the adverse employment action at the prima facie stage, an employee can show close enough timing between her protected activity and the adverse employment action. *See Brown*, 969 F.3d at 578. Alternatively, she can show "cat's paw causation" if a person who has retaliatory animus uses a decisionmaker to bring about an intended retaliatory action. *See Gee v. Principi*, 289 F.3d 342, 346 (5th Cir. 2002). However, here the conversation between Dean Hamm and Dr. Patel was too far removed from the non-renewal

meeting and the OIE investigation to establish a causal link through time alone.[7] And similarly, there is no evidence in the record that Dr. Lasky brought about the conversation between Dean Hamm and Dr. Patel as is necessary for establishing cat's paw causation.

But this court has also held that an employee can establish a causal link at the prima facie stage when evidence demonstrates that the adverse action was "based in part on knowledge of the employee's protected activity." *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001). In *Medina*, we decided that an employee whose manager terminated him and had knowledge about his protected activity met the causal link element of his prima facie case at the summary judgment stage because the evidence demonstrated that the manager's knowledge was "not wholly unrelated to the termination." *Id.* Here, as the district court acknowledged, Dean Hamm was aware of Dr. Saketkoo's protected activity when he made the decision to speak about her to Dr. Patel. Construing the evidence in the light most favorable to Dr. Saketkoo, such knowledge was "not wholly unrelated" to the alleged direction not to hire her.

However, even so, it is clear that she has not created a triable issue of fact as to "[t]he ultimate determination in an unlawful retaliation case," "whether the conduct protected by Title VII was a 'but for' cause of the adverse employment decision." *Long*, 88 F.3d at 305 n.4. Because the

---

[7] As the district court explained, we have held that a two-and-a-half month gap is sufficient to show causation, *see Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019), and the Supreme Court has suggested that a three-month gap is insufficient. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001) (per curiam). Dr. Patel suggests that he spoke with Dean Hamm at some point after June 2019, and even if the conversation occurred on July 1, 2019, this is too far removed from the February 2019 meeting and the March 2019 instigation of the OIE complaint for temporal proximity to establish a causal link.

No. 21-30055

Administrators have carried their burden of production,[8] this court turns to whether Dr. Saketkoo can prove her claim according to traditional principles of "but for" causation and carry her burden of demonstrating that their proffered non-discriminatory reason is pretextual. An employee can establish pretext in the context of retaliation "by showing that a discriminatory motive more likely motivated her employer's decision." *Brown*, 969 F.3d at 577 (quoting *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013)). In order to survive a motion for summary judgment, the plaintiff must show a "conflict in substantial evidence" on this issue. *Id.* (quoting *Musser v. Paul Quinn Coll.*, 944 F.3d 557, 561 (5th Cir. 2019)). At this juncture, we consider "numerous factors, including the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered." *Id.* (quoting *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002)).

"[T]here will be cases where a plaintiff has [] established a prima facie case . . . yet no rational factfinder could conclude that the action was discriminatory." *Id.* Here, to survive a motion for summary judgment, Dr. Saketkoo must show a conflict in substantial evidence as to whether Dean Hamm would not have made retaliatory comments to Dr. Patel but for Dr. Saketkoo's reporting of potentially discriminatory behavior and involvement in an OIE investigation. Yet Dr. Saketkoo only proffers the transcript of her

---

[8] The Administrators disputed that the conversation between Dean Hamm and Dr. Patel constituted an adverse employment action, so they did not discuss additional non-discriminatory reasons in the context of this claim. However, the performance issues that the Administrators emphasized in their discussion of non-discriminatory reasons for gender discrimination evidently apply. "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason." *Little v. Republic Refin. Co.*, 924 F.2d 93, 97 (5th Cir. 1991).

surreptitiously recorded telephone conversation with Dr. Patel. And this transcript is itself insufficient to create a conflict in substantial evidence as to whether "a discriminatory motive more likely motivated" Dean Hamm. *Id.*

Dr. Saketkoo's transcript tells us that Dr. Patel made statements implying Dean Hamm told him not to hire Dr. Saketkoo. There is no question that Dr. Patel made such statements. Indeed, in his affidavit, Dr. Patel expressly acknowledges that he made statements implying Dean Hamm told him not to hire Dr. Saketkoo. But he also clarifies that "Dean Hamm did not at any time tell [him] not to hire Dr. Saketkoo" and that he made the statements of his own volition "because it would not be appropriate . . . for UMC to act contrary to the decisions of Tulane, one of [its] faculty practice partners[,]" by hiring a physician whose employment contract the School did not renew.

Crucially, Dr. Saketkoo does not allege that Dr. Patel lied in his affidavit about what Dean Hamm told him in their summer 2019 conversation. If she had made this allegation, reading the evidence in the light most favorable to Dr. Saketkoo, she would be correct that "[Dr.] Patel's own words" would "clearly raise a disputed issue of material fact" as to what was said and whether a discriminatory motive more likely motivated Dean Hamm. However, Dr. Saketkoo instead alleges that the affidavit demonstrates "what [Dr. Patel] told [*her*] on the September[] 2019 call was not true." And this is neither disputed nor material. Dr. Patel acknowledges that he mischaracterized his conversation with Dean Hamm on the phone with Dr. Saketkoo. That Dr. Patel mischaracterized their conversation cannot confer a discriminatory motive on Dean Hamm, let alone support the proposition that Dean Hamm would not have made retaliatory comments but for Dr. Saketkoo's actions.

Although this court has previously held that a "combination of suspicious timing with other significant evidence of pretext can be sufficient to

survive summary judgment in a Title VII retaliation action," *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999), Dr. Saketkoo has failed to produce the significant evidence of pretext necessary for survival. We conclude that a reasonable jury could not establish that her protected conduct was the "but for" cause of the alleged adverse employment action based on the record before us.

We therefore affirm summary judgment in favor of the Administrators on Dr. Saketkoo's retaliation claim.

### C. Hostile Work Environment

"A claim of 'hostile environment' sex discrimination is actionable under Title VII." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 73 (1986). An employee who brings a hostile work environment claim must show that (1) she belongs to a protected class; (2) she was subjected to harassment; (3) the harassment was based on sex; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take remedial action. *Septimus v. Univ. of Hous.*, 399 F.3d 601, 611 (5th Cir. 2005).

To affect a term, condition, or privilege of employment, the harassment must be sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment. *Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 479 (5th Cir. 2008). "Whether an environment is hostile or abusive depends on a totality of circumstances, focusing on factors such as the frequency of the conduct, the severity of the conduct, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996). "[I]solated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Butler*

*v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 n.3 (5th Cir. 1998) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)).

On appeal, Dr. Saketkoo argues that Dr. Lasky's history of demeaning conduct at the School evidences a hostile work environment and that genuine material facts remain in dispute. We disagree. Although she presented evidence that Dr. Lasky demeaned her, the district court correctly noted that the incidents described were insufficiently severe or pervasive to sustain her hostile work environment claim.

Dr. Saketkoo points our attention to sporadic and abrasive conduct over the course of four years. This includes when Dr. Lasky (1) cut her off and told her it was "not her place" to discuss the needs of the clinic; (2) flailed his arms and yelled "I'm sick of this!" when she inquired about the use of funds; (3) hovered over her and shouted "I already told you what it was!" while documenting heart catheterization results; (4) mockingly asked her if she had "danced away scleroderma," upon which he interrupted, "We don't need you thinking! We need you working."; and (5) chastised her for teaching an undergraduate class, telling her to "[s]top it now!" However, we have routinely held that similarly sporadic and abrasive conduct is neither severe nor pervasive.[9] And the fact that other women at the School may have experienced severe or pervasive treatment does not save Dr. Saketkoo's

---

[9] *See Kumar v. Shinseki*, 495 F. App'x 541, 543 (5th Cir. 2012) (per curiam) (affirming summary judgment rejecting a hostile work environment claim when "alleged hostility occurred sporadically over a 27-month period"); *Williams v. U.S. Dep't of Navy*, 149 F. App'x 264, 268 (5th Cir. 2005) (per curiam) (affirming summary judgment rejecting a hostile work environment claim involving an alleged harasser "yelling and displaying anger toward [plaintiff] over fax machine toner"); *see also Pennington v. Tex. Dep't of Fam. & Protective Servs.*, No. A-09-CA-287-SS, 2010 WL 11519268, at *10 (W.D. Tex. Nov. 23, 2010), *aff'd*, 469 F. App'x 332 (5th Cir. 2012) (holding plaintiff failed to establish a hostile work environment where the employer was "always hostile [and] threatening," screamed at plaintiff, and violated plaintiff's space by slamming files and doors).

claim. *See Septimus*, 399 F.3d at 612 (observing that alleged harassment a plaintiff did not personally experience was inadequate to render her alleged harassment severe or pervasive).

Finally, even if we assume that Dr. Lasky's treatment of Dr. Saketkoo was severe enough to constitute harassment, her claim still fails. Although she presented evidence of his tendency to degrade her, Dr. Saketkoo did not demonstrate that his actions were based on her gender. The record shows that Dr. Lasky treated male physicians in a similarly abrasive manner and that they also complained about his behavior. The consistency of Dr. Lasky's workplace demeanor is lamentable, but that circumstance does not supplant a plaintiff's burden to satisfy each element of a Title VII cause of action.

Accordingly, we affirm summary judgment in favor of the Administrators on Dr. Saketkoo's hostile work environment claim.

## IV. CONCLUSION

For the aforementioned reasons, the judgment of the district court is AFFIRMED.