# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 15, 2025

Lyle W. Cayce
Clerk

No. 24-60318

Gwendolyn Spann,

*Plaintiff —Appellant*,

*versus*

Fedex Freight, Incorporated,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:23-cv-00399

_____

Before Elrod, *Chief Judge*, Engelhardt, *Circuit Judge*, and Guidry, *District Judge*.[*]

Greg Gerard Guidry, *District Judge*:[**]

Plaintiff-Appellant Gwendolyn Spann sued her employer, Defendant-Appellee FedEx Freight, Incorporated ("FedEx"), alleging race- and gender-based discrimination and retaliation claims arising out of three incidents at her workplace. The district court granted Defendant's Motion

_____

[*] United States District Judge for the Eastern District of Louisiana, sitting by designation.

[**] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-60318

for Summary Judgment and dismissed all claims. Having reviewed the motion *de novo*, we find no error in the district court's grant of summary judgment and AFFIRM.

## I.

Gwendolyn Spann has worked at FedEx's Richland, Mississippi, trucking terminal since March of 2017. On June 23, 2023, she filed suit against FedEx asserting (1) race and sex discrimination in the form of disparate treatment and hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; (2) race discrimination under 42 U.S.C. § 1981; (3) retaliation under Title VII and § 1981; and (4) "intentional infliction of emotional distress pursuant to § 28 U.S.C. 1343(a)(4) and 28 U.S.C. 1331."[1] Spann points to three allegedly racist or discriminatory acts that occurred at the terminal.

The first occurred on October 1, 2021. According to her deposition testimony, while Spann was operating her forklift going in and out of a trailer to pick up a skid, fellow dockworker, Christopher Williams, ran into her forklift with his forklift.[2] Spann reported the incident to Manager Robert Mason and then went home.

FedEx conducted an investigation and took written statements.

---

[1] Spann has attempted to base an intentional infliction of emotional distress ("IIED") claim on either 28 U.S.C. § 1343(a)(4) or 28 U.S.C. § 1331. However, 28 U.S.C. § 1343(a)(4) allows a party to "seek relief under any Act of Congress providing for the protection of civil rights, including the right to vote." And 28 U.S.C. § 1331 concerns federal question jurisdiction. Neither independently supports an IIED claim arising under federal law.

[2] In her written statement given on the day of the incident, Spann said that she was backing out of a tractor-trailer as Williams was approaching, that she came to a complete stop, and that Williams hit her forklift. In her Complaint, she alleges that she was coming out of a trailer when Williams struck her with his forklift.

No. 24-60318

Williams claimed that Spann backed into him. Spann claimed that Williams hit her forklift after she came to a complete stop. Dockworker Cornelius Jenkins contradicted Williams, stating that Spann came to a stop and that Williams had time to stop but did not.

FedEx issued a "Critical Written Warning" to Williams for unsafe driving, putting him on notice that any future unsafe driving incidents would result in "the next step of corrective action, up to termination." A Critical Written Warning is the third step in FedEx's four-step progressive disciplinary policy, with the fourth step being termination. Williams was also required to complete a forklift recertification.

Spann maintains she was severely injured during the accident and underwent surgery to her neck, but the surgery did not relieve the pain to her arm and back. She received worker's compensation benefits, and her medical bills were paid by FedEx. She returned to work without restrictions and was determined to be at Maximum Medical Improvement ("MMI") on May 12, 2022.[3]

Spann alleges FedEx intentionally treated her differently as an injured employee because she was female and black, when FedEx allowed its white male manager to ignore her injury. As a result of the differential treatment, she claims that she was "foreseeably harmed in her neck, arm and back" and that, "since 01/17/2023[,] new pains and the extension of that pain is now present within her body with painful reoccurring headaches and shoulder pain."

---

[3] Spann argues that no medical doctor signed off on whether she had reached MMI because the information was provided by a third-party administrator. The document relied upon by FedEx and the district court to find Spann had reached MMI, though apparently provided by a third party, does include a medical diagnosis signed by a health care provider but the provider's name is not printed.

The second act allegedly occurred in December of 2022. Spann claims she was required to give a written witness statement about "yet another separate racist employment discriminatory act." Two white male employees, Admiral Cranfield and possibly his son, purportedly used profanity and yelled at a supervisor when they were asked to perform certain duties. Spann asserts these white male employees were allowed to return to work the next day, and FedEx did nothing to deter future hostile work conditions that she, as a black female employee, was placed under by the white supervisor. Spann says she was required to write a report on the incident the same day and alleges this was discriminatory. Spann avers that the "sex and racial discriminatory conduct is bluntly open and intentional." However, FedEx's Employee Relations Advisor, John Hodge, stated that Admiral Cranfield was issued a Critical Written Warning, dated December 30, 2022.

The third act occurred in January of 2023. Spann alleges FedEx retaliated against her and denied her request for light duty work, despite her "complaining of the new and extended pains after being struck by a forklift." Spann provided a doctor's note in support of her request, directing her to "[a]void overhead work, no lifting greater than 30 pounds," and that if no such work was available, she should be "off work." Spann avers she was denied light duty work, even though a white female, Donna Walters, was granted light work duties as the result of a work-related injury but had not had any surgeries. Spann claims the difference in outcomes is due to race.

Hodge, the Employee Relations Advisor, stated there were "issues" with Spann's Early Return to Work ("ERTW") request that prevented FedEx from immediately granting it, namely: whether she had reached MMI and whether appropriate light-duty work was available. According to FedEx's records, Spann had returned to work in May of 2022 without re-strictions and was at MMI. Because she was at MMI, she was not eligible for ERTW. Hodge stated that the doctor's note did not include any

information about the source of the injury, but her medical records indicated she had suffered a "flareup" of her October 1, 2021 injury while doing some overhead work and lifting. According to Hodge, while the third-party administrator reached out to Spann's doctor for more information, FedEx, despite initially believing no appropriate work was available, nevertheless found available light-duty work by checking with another shift manager. Spann's ERTW was thus granted on January 26, 2023.

In comparison, Hodge stated Walters was granted ERTW on December 6, 2022, for a work-related injury she suffered in September of 2022. At the time of Walters's request, she was not at MMI and there was light duty work available.

Spann filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on May 31, 2023. In her charge, she alleged:

> I was discriminated at FedEx and retaliated against. A FedEx employee by the name of Christopher Williams was allowed to remain on an ungoverned forklift that he ran over me with and injured me because I was a woman. FedEx did not make him take a drug test or alcohol test as I would have. FedEx has failed to follow their rules for recertification before allowing Christopher Williams to resume driving the forklift. FedEx also retaliated against me on January 17, 2023, by denying my request for light duties after I was injured as they did for another employee name Donna Walters, who is a white female, when her injuries did not require for her to have surgery.

The EEOC issued a Right to Sue Letter on June 13, 2023. Thereafter, Spann filed the instant Complaint. FedEx moved for summary judgment on

No. 24-60318

all of Spann's claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. The district court granted FedEx's motion and dismissed Spann's claims with prejudice. Spann timely appealed.[4]

## II.

This Court reviews the district court's grant of summary judgment *de novo*, applying the same standards as the district court. *Brandon v. Sage Corp.*, 808 F.3d 266, 269 (5th Cir. 2015) (citations omitted). A party is entitled to summary judgment if it can demonstrate that there is no genuine dispute of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once a movant who does not have the burden of proof at trial makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted. *See, e.g.*, *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). A party opposing such a summary judgment motion may not rest upon mere allegations contained in the pleadings but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine dispute for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57 (1986).

When ruling on a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold,*

---

[4] Spann's opening brief does not address or assign error to the district court's dismissal of her claims for intentional infliction of emotional distress, retaliation under Title VII or § 1981, or the district court's dismissal of various alleged acts of discrimination that were not asserted in the underlying Complaint. These issues are, therefore, not before the Court. *Centurytel of Chatham, LLC v. Sprint Communs. Co., L.P.*, 861 F.3d 566, 573 (5th Cir. 2017) ("An appellant abandons all issues not raised and argued in its initial brief on appeal." (emphasis removed)).

*Inc.*, 369 U.S. 654, 655 (1962)). Unsubstantiated assertions are not competent summary judgment evidence. *See Celotex*, 477 U.S. at 324. The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise way that evidence supports his or her claim. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

With this standard of review in mind, we turn to the issues presented in Spann's appeal to this court.

A.    Whether the District Court erred in dismissing Spann's Forklift Accident-Related Title VII Claim.

Title VII prohibits employment discrimination based on a person's "race, color, religion, sex, or national origin," 42 U.S.C. § 2000e-2(a)(1), and prohibits retaliation against individuals for reporting or complaining about such discrimination, *id*. § 2000e-3(a). Title VII requires a plaintiff to exhaust administrative remedies by filing a Charge of Discrimination with the EEOC "within [180] days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); *see Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 337 (5th Cir. 2021).

The district court dismissed Spann's Title VII claim on the basis that it was time-barred. The forklift accident occurred on October 1, 2021, and the EEOC Charge was filed on May 31, 2023, well beyond the 180-day deadline to file a Charge. The district court further held that Spann failed to demonstrate that the "forklift incident caused her to suffer any harm respecting an identifiable term or condition of employment," other than frustration over the perceived inadequacy of FedEx's response to the incident.

Spann argues the district court erred by dismissing her forklift-related Title VII claims as untimely, because she did not have "sufficient knowledge" of the basis for her claim until 180 days prior to filing her EEOC

Charge, or even until the Charge itself was filed. She contends she never claimed that discrimination based on race or gender began on October 1, 2021, only that she had given the date as when the incident happened. She asserts the EEOC "ratified" her Charge when it issued the right to sue notice. *Id.* Spann cites to *Hardy v. Nissan N. Am., Inc.*, 2021 WL 6803235 (S.D. Miss. Sept. 16, 2021), presumably for the proposition that the 180-day limitation does not commence until the employee has sufficient knowledge of her claim.[5] She thus maintains she did not have the requisite knowledge of her claims stemming from the forklift incident until some later time, perhaps as late as when the EEOC Charge was filed.

However, this court has made clear that the 180-day period commences from the alleged discriminatory act, not when a plaintiff later perceives discrimination. *See Merrill v. S. Methodist Univ.*, 806 F.2d 600, 605 (5th Cir. 1986) ("This Circuit has … consistently focused on the date that plaintiff knew of the discriminatory *act*." (emphasis in original)). Additionally, we have explained that the 180-day limitation period for Title VII claims "begin[s] to accrue 'when the plaintiff knows or reasonably should know that the discriminatory act has occurred.'" *Cervantes v. Imco Halliburton Servs.*, 724 F.2d 511, 513 (5th Cir. 1984) (quoting *McWilliams v. Escambia Cty Sch. Bd.*, 658 F.2d 326, 330 (5th Cir. 1981)). Although Spann asserts for the first time in this court that she did not know she had a claim until the EEOC Charge was filed, or within 180 days thereof, she does not

---

[5] *Hardy* is not necessarily helpful to Spann's case. There, the district court discussed and rejected the plaintiff's "continuing violations theory" under which he had alleged the events, including those outside the 180-day period, were all part of the same unlawful employment practice. Other than citing *Hardy*, Spann does not make such a continuing violations argument. *See Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) (explaining that the continuing violations doctrine is equitable in nature and extends the limitations period on otherwise time barred claims only when the unlawful employment practice manifests itself over time, rather than as a series of discrete acts).

identify any supporting evidence showing (1) what led to her belief that she may have been subject to race or sex discrimination, (2) when she arrived at this belief, or (3) why until the filing of the EEOC Charge did she not know that she had a claim of race or sex discrimination.

Instead, Spann cites to *Occidental Life Insurance Co. of California v. EEOC*, 432 U.S. 355 (1977), for the proposition that "once the right to sue letter is issued by the EEOC and the charging party files suit within the 90 days, then there is no limitation period for claims sought." Spann seems to believe that the right to sue letter allows her to assert any claims in a timely-filed suit without regard to the 180-day rule. But this argument is unavailing. *Occidental* addressed only the time limitation imposed on the EEOC's power to bring suit under Title VII, not the time limitation imposed on the claimant. *Id*.

Spann's Title VII claim is clearly time-barred. She filed her EEOC charge more than 180 days from the date of the forklift accident. "Title VII requires employees to exhaust their administrative remedies before seeking judicial relief." *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). The EEOC charge must be filed "within [180] days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1).

The 180-day time limit commenced immediately after the incident. Spann's charge merely states that Williams was not required to undergo a drug and alcohol test or to be forklift recertified, but he was instead allowed to continue working on a forklift following the October 1, 2021 incident. She was thus clearly aware of these allegations immediately after the incident, which commenced the 180-day period.

Additionally, Spann has failed to establish a *prima facie* case of

No. 24-60318

discrimination.[6] She alleges FedEx discriminated against her (1) by not requiring Williams to undergo drug and alcohol testing or a re-entry program before being allowed to return to work and (2) by not immediately investigating the accident and providing Spann with the findings. The record before us belies her allegations. Williams was required to undergo recertification before returning to work, FedEx investigated the incident, and Williams was cited for his unsafe driving. Spann has identified no evidence to show that FedEx's actions following the forklift incident caused her to suffer an adverse employment action, that is, "some harm respecting an identifiable term or condition of employment." *See Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 355 (2024).

---

[6] A plaintiff may establish discrimination directly or indirectly. Where the plaintiff brings only circumstantial evidence of discrimination, we rely on the three-step process articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Pursuant to this framework, the initial burden rests with the employee to produce evidence that he: (1) is a member of a protected class, (2) was qualified for the position that he held, (3) was subject to an adverse employment action, and (4) was treated less favorably than others similarly situated outside of his protected class. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017); *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004). An adverse employment action was evaluated in a recent Supreme Court decision as follows: to establish a discrimination claim, an employee "must show some harm respecting an identifiable term or condition of employment," but the employee need not show "that the harm incurred was 'significant.' Or serious, or substantial, or any similar adjective suggesting that the disadvantage to the employee must exceed a heightened bar." *Muldrow v. City of St. Louis, Mo.*, 601 U.S. 346, 355 (2024) (citation omitted). Once the plaintiff has established her *prima facie* case of discrimination, the burden shifts to the employer to show "a legitimate, nondiscriminatory reason for the adverse employment action." *Alkhawaldeh*, 851 F.3d at 426. "If the employer is able to articulate a legitimate, non-discriminatory reason for the adverse employment action, the burden shifts back to the employee to demonstrate that the employer's proffered reason is a pretext for discrimination." *Id.*

B.      Whether the District Court erred in dismissing Spann's Title VII and § 1981 Hostile-Work-Environment claims.

"A hostile work environment claim is composed of a series of separate acts that collectively constitute one unlawful employment practice." *Wantou v. Wal-Mart Stores Tex., L.L.C.*, 23 F.4th 422, 433 (5th Cir. 2022) (citation and internal quotation marks omitted). To succeed, the plaintiff must show that (1) the employee belonged to a protected class; (2) the employee was subject to unwelcome harassment; (3) the harassment was based on the protected class; (4) the harassment affected a "term, condition, or privilege" of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Clark v. City of Alexandria*, 116 F.4th 472, 479 (5th Cir. 2022) (citations omitted).

Harassment generally takes the form of "discriminatory intimidation, ridicule, and insult" that rises to the level of "hostile or abusive." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65 (1986)). "For harassment to affect a term, condition, or privilege of employment, it 'must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" *Wantou*, 23 F.4th at 433 (citations omitted). The plaintiff must show subjective awareness of the hostility or abusiveness and that her awareness is objectively reasonable. *Clark*, 116 F.4th at 479.

The district court initially observed that Spann's Complaint contained "scattered references to a hostile work environment . . .." The district court found that Spann had "not clearly alleged that she was subjected to a hostile work environment based on her race, sex or retaliation, or all or some combination of the three."

Nevertheless, to the extent Spann was asserting a Title VII claim of hostile work environment based on race or sex, the district court dismissed

such a claim as time-barred based on her failure to exhaust administrative remedies. The district court reasoned that there was no reference to a hostile work environment in Spann's EEOC Charge and no hint of any facts in the Charge that might arguably support such a claim. The district court held that Spann was foreclosed from pursuing a hostile work environment claim under Title VII. *See Walton-Lentz v. Innophos, Inc.*, 476 F. App'x 566, 570 (5th Cir. 2012) (claim of hostile work environment could not "reasonably be expected to grow out of" EEOC charge that did not mention hostile work environment or allege facts to support such claim).[7]

As to Spann's § 1981 hostile work-environment claims, they, too, were dismissed because the district court found she failed to allege or to produce evidence that the "alleged misconduct was directed toward plaintiff or motivated in any part by her female gender (or by her race)." The district court thus concluded that "[i]t may have been a hostile, and perhaps even dangerous and frightening work environment; but it was not a sexually or racially hostile work environment."

Spann now says the district court erred, somewhat confusingly arguing that a work environment under § 1981 need only be hostile in general, not "sexual[ly] or racially hostile." She points to the Admiral Cranfield incident, as well another incident in which an angry employee allegedly made reference to a firearm in his vehicle, as evidence of a generally hostile work environment. But a necessary element of her claim is that the harassment be based on a protected characteristic. *See Johnson v. PRIDE Indus., Inc.*, 7 F.4th

---

[7] The district court correctly noted: Whether a plaintiff has exhausted her administrative remedies as to a claim is determined "not solely by the scope of the administrative charge itself, but by the scope of the EEOC investigation which 'can reasonably be expected to grow out of the charge of discrimination.'" *Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970)).

392, 399 (5th Cir. 2021). The "critical issue" in determining whether workplace activities constitute harassment based on sex is "whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) (citation omitted). "Title VII is not a shield against harsh treatment at the workplace; it protects only in instances of harshness disparately distributed." *Jackson v. City of Killeen*, 654 F.2d 1181, 1186 (5th Cir. 1981). Spann has made no showing of disparately distributed harshness and has thus failed to establish a hostile work environment based on her race or gender.

C.     Whether the District Court erred in dismissing Spann's Delayed Light-Duty Approval Claim.

To establish a *prima facie* case of race or sex discrimination based on disparate treatment in the Fifth Circuit, an employee generally must demonstrate that "1) is a member of a protected class; 2) was qualified for her position; 3) was subjected to an adverse employment action; and 4) was replaced by someone outside the protected class, or that other similarly situated persons were treated more favorably." *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005). To satisfy the "similarly situated" prong, the employee performs a comparator analysis. *See Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253 (5th Cir. 2009). Under this analysis, the employee must establish that she was treated less favorably than a similarly situated employee outside of her protected class in nearly identical circumstances. *See id.* at 259–61 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). The similarly situated employee is known as a comparator. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 998 (5th Cir. 2022). "A variety of factors are considered when determining whether a comparator is similarly situated, including job responsibility, experience, and qualifications." *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018). The

employee must establish that the comparator's conduct is "nearly identical," though not strictly identical. *Lee*, 574 F.3d at 260 n.25.

The district court held that Spann failed to demonstrate a *prima facie* case of discrimination because she could not point to a similarly situated comparator of a different race who was treated differently under nearly identical circumstances. Spann seems to argue primarily that the district court misread the record because her January 2023 injury claims were both new and extended from the October 1, 2021 incident. As noted previously, she states that no medical doctor ever determined that she had reached MMI, and thus she was in a similar position as Donna Walters, who had also not reached MMI. Presumably, Spann is attempting to establish a genuine dispute as to a material fact, that is, whether she had reached MMI either from the October 1, 2021 forklift accident or the most recent claim of injuries in January 2023. But even if her MMI status is or was unclear, that fact does not defeat summary judgment. Rather it supports the reasoning of the district court.

The record supports a finding that there were no apparent issues regarding Walters's eligibility for the ERTW program. Despite Spann's arguments to the contrary, a legitimate question existed as to whether Spann was eligible to participate in the program. Although the records available to FedEx showed that she had reached MMI, the more recent physician's note gave no indication as to the source of her injuries. FedEx reasonably decided to investigate further by reviewing Spann's medical records. Thus, Spann was not similarly situated to Walters, because the latter had clearly not reached MMI and her eligibility was therefore apparent on the face of her request. The district court correctly determined that Spann failed to show she was treated differently than a similarly situated employee under "nearly identical circumstances." *Saketkoo*, 31 F.4th at 998.

No. 24-60318

## III.

For the foregoing reasons, we conclude Spann has failed to show any error in the district court's grant of summary judgment in favor of FedEx based on a misreading of the record before it. After *de novo* review, we AF-FIRM.