# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
December 7, 2020

Lyle W. Cayce
Clerk

No. 20-10322

Rosemary Salazar,

*Plaintiff—Appellant*,

*versus*

Lubbock County Hospital District, *doing business as* University Medical Center,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 5:18-CV-232

Before Clement, Ho, and Duncan, *Circuit Judges*.

Edith Brown Clement:

The question presented is whether Rosemary Salazar sufficiently demonstrated that the reasons given by Lubbock County Hospital District, d/b/a University Medical Center ("UMC"), for her termination were merely pretexts for discrimination. The district court found that Salazar failed to adduce enough evidence to create a genuine dispute. We agree and affirm.

No. 20-10322

I.

Salazar was employed by UMC for twenty-seven years. She began as a respiratory therapist in 1990 and transitioned to adult respiratory educator in 2004. Although Salazar was the assistant director of the department from 2012 to 2014, she returned to her position as an educator in 2015 and remained there until her termination in 2017—spending at least ten years as an educator.

UMC contends that Salazar's performance began to decline in 2016. Its former director and assistant director—Robert Lopez and Anthony Trantham, respectively—assert that they observed her struggle to communicate and claim that her disorganization caused scheduling confusion and frustration for many members of the staff. UMC alleges that, as time passed, it made several attempts to convey to Salazar "the importance [of] chang[ing] her current practices." By contrast, Salazar claims that she was never counseled or warned in any way that she was performing poorly. Instead, she asserts that she was the recipient of several merit raises, which were indicative of her satisfactory performance.

On March 13, 2017, UMC terminated Salazar. At the time she was discharged, Salazar was 57 years old. Salazar brought this lawsuit, alleging age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et. seq.* Her principal claim was that she and several other elderly employees were fired and replaced by younger respiratory therapists, whom UMC paid at a lower rate.

UMC filed a motion for summary judgment. Because Salazar and UMC agreed that Salazar demonstrated a *prima facie* case of age discrimination and that UMC articulated a legitimate, non-discriminatory basis for her termination, the district court focused only on whether Salazar adduced sufficient evidence to create a genuine dispute over the veracity of

No. 20-10322

UMC's proffered reasons for her discharge.[1] It found that she did not and awarded judgment in favor of UMC; Salazar appealed.

## II.

Salazar argues on appeal that the district court erred in granting summary judgment to UMC because there existed a genuine dispute as to whether UMC's reasons for her termination were pretexts for discrimination. "We review a grant of summary judgment *de novo*, applying the same standard as the district court," and take all inferences in the light most favorable to Salazar. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 349 (5th Cir. 2005).

"Under the ADEA, it is 'unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (quoting § 623(a)(1)). When a plaintiff brings a cause of action under the ADEA, the plaintiff has the burden of showing that her age was the but-for cause of her employer's adverse action, *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010), and she may satisfy this burden with circumstantial evidence, *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002).

---

[1] Neither party has contended on appeal that the *McDonnell Douglas* framework is inapplicable to ADEA claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) (delineating a burden-shifting test). Accordingly, as the Supreme Court has not spoken on this issue either, we will follow circuit precedent applying the framework to age discrimination cases. *See, e.g.*, *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010); *Baker v. Am. Airlines*, 430 F.3d 750, 753 (5th Cir. 2005); *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004).

When she presents circumstantial evidence, the *McDonnell Douglas* framework applies. *Machinchick*, 398 F.3d at 350. The *McDonnell Douglas* framework first requires a plaintiff to establish a *prima facie* case of age discrimination. *Jackson*, 602 F.3d at 378. The burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the plaintiff's discharge. *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 254 (1981). As stated, the parties have agreed that these two steps have been satisfied.

Thus, to carry her burden, Salazar must prove by a preponderance of the evidence that the legitimate reasons offered by UMC were not its true reasons, but were pretexts for discrimination. *Reeves*, 530 F.3d at 143 (quoting *Burdine*, 450 U.S. at 253). To do so, she must "show pretext 'either through evidence of disparate treatment or by showing that [UMC's] proffered explanation is false or unworthy of credence.'" *Jackson*, 602 F.3d at 378–79 (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003)). The evidence establishing Salazar's *prima facie* case, and inferences properly drawn therefrom, may be considered in determining whether Salazar carried her burden. *Burdine*, 450 U.S. at 255 n.10.

UMC's articulated reasons for Salazar's termination were her poor performance and demonstrated lack of effort to change her behavior. Therefore, to prevail at this stage, Salazar must show that reasonable minds could disagree that these were, indeed, the reasons for her discharge—either by evidence of disparate treatment or inaccuracy of the reasons given—*and* about whether her age was the actual reason. *See Saint Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason.").

In support of her contention that UMC's proffered reasons for her discharge were pretextual, Salazar attempts to show UMC's reasons were false. She specifically points to (1) her own statements that she performed properly and well; (2) her receipt of merit raises; (3) her claims that UMC also fired several other elderly employees who earned more than the younger employees; and (4) evidence that UMC did not follow its typical policy or disciplinary process in terminating her employment.

As an initial matter, Salazar's self-serving statements that she was performing adequately are insufficient to create a triable issue of fact as to whether UMC fired her because of her age. *Cf. Jackson*, 602 F.3d at 379; *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (affirming summary judgment for the plaintiff when defendant's only evidence in opposition was his own "self-serving allegations"); *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (explaining that a "conclusory, self-serving statement" by defendant was insufficient to create a triable issue of fact). Merely disputing UMC's assessment of her performance does not create an issue of fact. *See Sandstad*, 309 F.3d at 899. Therefore, these statements need not be considered.

Salazar's contention that she received merit raises similarly fails to give rise to an inference of pretext. Evidence of a merit raise *could* call into question the sincerity of an employer's claim of an employee's poor performance, *see* Andrew J. Ruzicho, Louis A. Jacobs, & Andrew J. Ruzicho II, *Evaluations—Controlling Law*, 1 EMPLOYMENT PRACTICES MANUAL § 5:18 (2020) (explaining that too short a period between a good and bad evaluation may impeach the credibility of the latter), but Salazar's assertion does not do so.

Although she claims she "received numerous merit raises for [her] job performance," she refers specifically to only one instance: a raise she

received in 2016 based upon her job performance in 2015. UMC contends that Salazar's performance began to decline in 2016. These positions are not mutually exclusive. Furthermore, "prior good evaluations alone cannot establish that later unsatisfactory evaluations are pretextual." *Billet v. CIGNA Corp.*, 940 F.2d 812, 826 (3d Cir. 1991) (citing *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 343–44 (3d Cir. 1990)), *overruled on other grounds by Hicks*, 509 U.S. 502; *cf. Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1229 n.1 (11th Cir. 2002) ("Winning an award for one quarter of performance, even if he did perform admirably during that quarter, does not erase all previous negative evaluations of his work.").

Salazar further fails to note that this evaluation of her performance—the same one that included the merit raise—also details several significant shortcomings throughout the year. It unequivocally explains that Salazar needed to make certain adjustments to her behavior and provides specific examples of her impermissible conduct. Thus, Salazar's claims of merit raises do not controvert UMC's allegations of her poor performance.

Salazar next alleges that she, and others, were terminated so that UMC could enlist younger respiratory therapists to complete the same work more cheaply. Yet she fails to offer any competent rebuttal evidence. Salazar's own statements are the only evidence on this point:

> In addition to myself, at least three other long[-]time employees of the respiratory therapy department, each of whom was over sixty years of age, were fired by UMC. These employees were Howard Wright, Ricky Jones and Mary Watts. . . . These three employees, and myself, were all fired by Lopez, the director of the respiratory therapy department, in 2017.

Salazar directs us to nothing else in the record in support of this assertion. She does not attach declarations or affidavits by any of these three individuals. She does not provide us with an interrogatory served upon UMC

corroborating any of this information. Without more, this allegation is insufficient to create a genuine dispute of fact as to whether Salazar—and company—were fired on the basis of age. *See Ross v. Univ. of Texas at San Antonio*, 139 F.3d 521, 526 (5th Cir. 1998) (stating that an employee's failure to "refer the Court to any particularized evidence to support his subjective view of the facts" undermined his ability to rebut his employer's legitimate, non-discriminatory reason for his termination); *see also Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996) (stating that generalized statements were insufficient to support an inference of discrimination).

Finally, we turn to Salazar's claim that UMC did not follow its own progressive discipline plan. Termination of an employee that does not proceed pursuant to an employer's progressive discipline policy may give rise to an inference of pretext. *Machinchick*, 398 F.3d at 355. As the district court acknowledged, this is Salazar's "strongest argument" in support of her ADEA claim; however, it, too, comes up short.

She asserts that the facts of her case align with those in *Goudeau v. National Oilwell Varco, L.P. See* 793 F.3d 470, 477 (5th Cir. 2015) ("[W]hen an employer opts to have a disciplinary system that involves warnings, failure to follow that system *may* give rise to inferences of pretext." (emphasis added)). There, however, Goudeau claimed that he received a flurry of written warnings on the day he was fired, even though they related to events that occurred prior to that meeting. *Id.* at 476–77. Additionally, the employer not only made ageist remarks but also claimed, after hearing their ages, that he intended to fire two employees. *Id.* at 478. It was on the basis of these assertions—"the doubts that Goudeau . . . raised about the warnings, combined with the ageist comments that are potentially corroborated by [Goudeau's firing]"—that the court determined that a jury could conclude that Goudeau's age was the reason for his termination. *Id.* at 477.

No. 20-10322

The circumstances of Salazar's termination are plainly different. She makes no suggestion that UMC submitted tardy, post-hoc work reviews. Nor does she claim that UMC attempted to paper her file. Salazar has also not adduced evidence tending to show Lopez or Trantham made ageist remarks in her workplace. Instead, she merely alleges that Lopez and Trantham are lying but does not provide any evidence to support her allegation.

In contrast, UMC submitted orientee and preceptor evaluations. It attached employee satisfaction surveys. Most of all, UMC included Salazar's performance evaluation for 2015, which was provided to her in March 2016 and clearly details areas of concern over her past performance as well as directives for improvement in the future.

Furthermore, although UMC did not follow its progressive discipline policy, it didn't have to. UMC's policy specifically provides for the use of discretion. *Compare* ECF TXND 5:18-CV-232, 20, p.12 ("[The levels of discipline] are recommendations. Management reserves the right to impose the level of discipline deemed appropriate for specific sets of circumstances."), *and Taylor v. Peerless Indus., Inc.*, 322 F. App'x 355, 367 (5th Cir. 2009) (per curiam) (involving a policy that emphasized that "disciplinary measures used in a particular case will be highly dependent on the specific circumstances and . . . managers may employ some, all, or none of the steps" (cleaned up)), *with Machinchick*, 398 F.3d at 355 n.29 (involving an internal company policy that specifically stated it should be "followed in most circumstances"). UMC's digression from the terms of its policy is therefore of little value to our analysis.

Despite viewing the evidence in the light most favorable to Salazar as we must, our holding is inescapable. UMC proffered a legitimate, non-

No. 20-10322

discriminatory reason for Salazar's discharge: her poor performance.[2] Salazar failed to present sufficient evidence to create doubt as to whether this reason was a mere pretext for discrimination.

AFFIRMED.

---

[2] Salazar must demonstrate that each reason was a pretext for discrimination. *See Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001) ("The plaintiff must put forward evidence rebutting each of the non[-]discriminatory reasons the employer articulates."). Because she fails to create a genuine dispute as to whether UMC's claim that it fired her based upon her poor performance was pretextual, we need not address UMC's second proffered reason for her discharge.

JAMES C. HO, *Circuit Judge*, concurring:

I concur. I write separately simply to clarify one point. Summary judgment is appropriate here, but not because Salazar presented "self-serving" statements regarding her performance. Summary judgment is appropriate because those statements are conclusory.

There is nothing inherently wrong with self-serving statements. *See Dall./Fort Worth Int'l Airport Bd. v. INet Airport Sys., Inc.*, 819 F.3d 245, 253 n.14 (5th Cir. 2016) ("Evidence proffered by one side to support or defeat a motion for summary judgment will inevitably appear 'self-serving.'"). We fully expect litigants to present statements that serve their interests. Indeed, our adversarial legal system is premised on that notion. The mere fact that a statement is self-serving does not reduce its value or make it unworthy of consideration. And in the summary judgment context, "[s]imply being 'self-serving' . . . does not prevent a party's assertions from creating a dispute of fact." *Bargher v. White*, 928 F.3d 439, 445 (5th Cir. 2019). *See also Lester v. Wells Fargo Bank, N.A.*, 805 F. App'x 288, 291 (5th Cir. 2020) ("[M]erely claiming that the evidence is self-serving does not mean we cannot consider it or that it is insufficient.") (citation omitted).

The problem arises when a statement is not just self-serving, but conclusory. "[D]eclarations of parties that set forth only conclusory and unsupported assertions are sometimes described disparagingly as 'self-serving' . . . as if [its] 'self-serving' nature . . . renders it automatically insufficient." *Spring St. Partners-IV, L.P. v. Lam*, 730 F.3d 427, 441 n.7 (5th Cir. 2013) (citation omitted). But it is the conclusory nature of a statement that makes it inadequate. Whereas a self-serving statement (as the adjective suggests) serves the party's interests, a conclusory statement recites the bottom-line legal standard but fails to present any factual detail or specifics indicating what evidence will actually satisfy the requisite legal standard. *See*

*Conclusory*, Black's Law Dictionary (11th ed. 2019) ("[e]xpressing a factual inference without stating the underlying facts on which the inference is based").  A party cannot rely on mere conclusory statements to create an issue of fact and thereby defeat summary judgment.  *See*, *e.g.*, *Lester*, 805 F. App'x at 291 ("Of course, when an affidavit is conclusory, it cannot preclude summary judgment—whether it is self-serving or not.") (citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 (5th Cir. 2005) ("attempt[ing] to create a fact issue . . . by relying on a conclusory and self-serving [statement] is on unsteady ground"); *BMG Music v. Martinez*, 74 F.3d 87, 91 (5th Cir. 1996) (explaining that a "conclusory, self-serving statement" by defendant was insufficient to create a triable issue of fact)).

Because Salazar's statements with respect to her job performance were conclusory, summary judgment was proper.  I concur.