# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

December 29, 2022

Lyle W. Cayce
Clerk

No. 22-10193

GEORGE F. FORBIS, III,

*Plaintiff—Appellant*,

*versus*

EXETER FINANCE, L.L.C.,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-cv-2007-C

Before GRAVES, WILLETT, and ENGELHARDT, *Circuit Judges*.
PER CURIAM:*

Appellant George Forbis appeals the district court's denial of his motion for additional discovery under Rule 56(d) of the Federal Rules of Civil Procedure and the court's summary-judgment dismissal of his Title VII claims for retaliation and disparate treatment in favor of appellee Exeter Finance, L.L.C. ("Exeter"). Finding no reversible error, we AFFIRM.

---

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

No. 22-10193

## I.

Forbis worked as a senior treasury analyst for Exeter from March of 2015 until his termination in January of 2020.  According to his supervisor, Brett Bradley, his job performance was satisfactory until 2019.  In October of 2019, Forbis complained to Exeter's human resources department about racial and religious discrimination.  His complaint stemmed from a lunch he attended with Ben Miller – Bradley's supervisor – and other unidentified employees.  In his affidavit, Forbis described that as lunch was served, he "quietly sa[id] grace to [him]self," during which Miller allegedly stated: "Let[']s all stop so that George can say his prayer.  You mean to tell me that you believe in God.  That there is some puppeteer in the sky pulling all the strings.  You people kill me thinking there is a God."[1]  Forbis contends that the "you people" comment "was directed at [him] [because he] was the only Black person at the table."  Forbis alleges that it was only after he lodged this complaint that he received negative performance reviews.  On January 27, 2020, Exeter terminated Forbis.

Exeter moved for summary judgment on all claims.  Afterward, Forbis moved under Rule 56(d) for additional discovery.  The district court denied the motion for additional discovery and granted the motion for summary judgment.  Forbis timely appealed.

## II. The Rule 56(d) Motion

We review a district court's denial of a Rule 56(d) motion for abuse of discretion.  *Renfroe v. Parker*, 974 F.3d 594, 600-01 (5th Cir. 2020) (citing *Am. Fam. Life Assurance Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013)), *cert. denied*, 141 S. Ct. 2519 (2021).  "'To constitute an abuse of

---

[1] Neither Bradley nor Miller recall the prayer incident at lunch.

discretion, the district court's decision must be either premised on an erroneous application of the law, or on an assessment of the evidence that is clearly erroneous.'" *Torres v. SGE Mgmt., L.L.C.*, 945 F.3d 347, 352 (5th Cir. 2019) (quoting *In re High Sulfur Content Gasoline Prod. Liab. Litig.*, 517 F.3d 220, 227 (5th Cir. 2008)). "'A trial court enjoys wide discretion in determining the scope and effect of discovery,' and it is therefore 'unusual to find an abuse of discretion in discovery matters.'" *JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 936 F.3d 251, 255 (5th Cir. 2019) (quoting *Equal Emp. Opportunity Comm'n v. BDO USA, L.L.P.*, 876 F.3d 690, 698 (5th Cir. 2017).

Twenty-one days after Exeter filed its motion for summary judgment, Forbis filed his Rule 56(d) motion, wherein he sought: "(1) all email communications between Brad Nall and Plaintiff from January 1, 2018 to December 31, 2019,[2] and (2) the work performed by Barbara Zajac from March 1, 2015 to January 27,2020, stored on Defendant's Treasury drive under the folder entitled 'Barb,'"[3] which Forbis narrowed to one "necessary" Excel file. The district court denied Forbis's Rule 56(d) motion because: (1) "several of the newly raised requests for discovery (e-mail exchange with Mr. Nall and Ms. Zajac's work) were not diligently pursued in the 15 months this lawsuit has been pending prior to Plaintiff's filing of the Motion for Additional Discovery"; and (2) "the time frame for *all* e-mails

---

[2] At the time Forbis made this request, Exeter had already produced "all of the email messages exchanged between Mr. Forbis and Mr. Nall during the third and fourth quarters of 2019."

[3] Forbis requested other discovery in his Rule 56(d) motion. The district court, however, found that those other requests were duplicative of requests raised in Forbis's separate motion to compel, which the court denied. So, said the court, those duplicative requests were moot, as they "ha[d] been disposed of by the Court's ruling regarding the [earlier-filed] Motion to Compel."

exchanged between Mr. Forbis and Mr. Bradley over an approximately five year period [wa]s too broad." We affirm the district court's decision, but on different grounds. *See LLEH, Inc. v. Wichita Cnty., Tex.*, 289 F.3d 358, 364 (5th Cir. 2002) ("We may affirm for reasons other than those relied upon by the district court.") (alteration, citation, and internal quotation marks omitted).

On appeal, Forbis only addresses his Rule 56(d) request for the Zajac-related file.[4] He contends that the facts therein will show: (1) "almost identical situations between Mr. Forbis and Ms. Zajac"; (2) that Zajac "refused to work on any special projects"; and (3) that Forbis was working on four major special projects. Forbis submitted to the district court that "[he] need[ed] the Excel file under the folder Barb for the work which was performed by Zajac to evidence her failure to any work on any project, yet no disparage [sic] treatment of Zajac such as termination [sic]." He continued: "[t]he Excel Spread Sheet [sic] file on Zajac will establish that not only has Barbara Zajac never worked on any project during the period from March 1, 2015 to January 27, 2020, but she has also she was not been performing [sic] the essential functions of Senior Treasury Analyst as defined by Defendant's Job Description of a senior treasury analysis."

Four days before filing his Rule 56(d) motion, Forbis's counsel informally requested "'the records of the work performed by Barbara Zajac on the Excel Spread Sheet Format.'" To this request, Exeter responded:

> [W]e do not even know whether a document you now claim is
> so vital to this case even exists, or ever existed. Your request

---

[4] Forbis fails to engage with the district court's second reason for denial: that "the time frame for *all* e-mails exchanged between Mr. Forbis and Mr. Bradley over an approximately five year period [wa]s too broad." Therefore, the broadness issue is inadequately briefed, and Forbis forfeits any argument on this ground.

for what you describe as an Excel spreadsheet which records the work performed by Barbara Zajac on special projects is simply irrelevant and unnecessary. Exeter does not dispute that Ms. Zajac did not work on the same projects that Mr. Forbis did. Indeed, Ms. Zajac addresses this very point in her declaration – that she and Mr. Forbis worked on different things. This is not a disputed fact between the parties.

In addition to Exeter's concession that Zajac did not work on the same projects as Forbis, there is other ample record evidence supporting what Forbis sought to discover, namely, "evidence that Zajac has never done any work on a project[] since [Forbis] ha[d] been employed with Defendant," and that "Barbara Zajac was working on no projects and was performing only the daily assignments [] [while Forbis] was performing [his] daily assignment comparable to the daily assignments to Zajac plus all of the additional projects."

It is for this reason that we affirm the district court's denial of Forbis's Rule 56(d) motion. "[T]he party filing the motion must demonstrate how additional discovery will create a genuine issue of material fact." *Jacked Up, L.L.C. v. Sara Lee Corp.*, 854 F.3d 797, 816 (5th Cir. 2017) (quoting *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 422–23 (5th Cir. 2016)). "In particular, the party opposing summary judgment 'must "set forth a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist and indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion."'" *Id.* (quoting *Am. Fam. Life Assur. Co. of Columbus v. Biles*, 714 F.3d 887, 894 (5th Cir. 2013)). Even assuming that Exeter produced a spreadsheet showing that Zajac was not working on special projects, the spreadsheet would add nothing to the case that was not already undisputed. It could not create a genuine issue of material fact. The district court did not err in denying

Forbis's Rule 56(d) motion where the purported purpose of the spreadsheet sought was to evidence that Zajac did not work on projects while Forbis did. That evidence is both undisputed and readily available in other parts of the record. The spreadsheet, then, could hardly influence the outcome of the summary-judgment motion. Had the hypothetical spreadsheet been produced, the fact that Zajac and Forbis performed different job responsibilities would not constitute summary-judgment-defeating evidence. As explained below, that fact, in part, compels us to grant summary judgment. So, putting aside the district court's findings of overbreadth and lack of due diligence, we AFFIRM.

### III. The Motion for Summary Judgment

We review a district court's grant of summary judgment de novo. *Saketkoo v. Adm'rs of Tulane Educ. Fund*, 31 F.4th 990, 997 (5th Cir. 2022) (citing *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A fact is "material" if its resolution in favor of one party might affect the outcome of the lawsuit under governing law.'" *Saketkoo*, 31 F.4th at 997 (quoting *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (per curiam)). "'An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Id.* (quoting *Hamilton*, 232 F.3d at 477).

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'" *Id.* at 999 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006)). Its disparate treatment provision prohibits employers

No. 22-10193

from intentionally discriminating against any individual with respect to compensation, terms, conditions, or privileges of employment based on the individual's gender or other protected class. 42 U.S.C. § 2000e–2(a)(1); *Roberson v. Alltel Info. Servs.*, 373 F.3d 647, 651 (5th Cir. 2004). Forbis's retaliation claim is based on the poor performance reviews received and his ultimate termination after he made complaints to human resources. His disparate-treatment clam is based on his termination for failure to complete a special project, where his alleged comparator, Barb Zajac, a white person, was not fired for her refusal to work on special projects. Both claims fail at the pretext stage.

Because each claim is based on indirect evidence, we apply Title VII's familiar burden-shifting framework, the *McDonnell Douglas* framework. *See Willis v. Cleco Corp.*, 749 F.3d 314, 317-18 (5th Cir. 2014).[5] Once a plaintiff makes out a prima facie case of retaliation or disparate treatment, the burden then shifts to the defendant employer to articulate a legitimate, nonretaliatory or nondiscriminatory reason for its actions. *Saketkoo*, 31 F.4th at 1000; *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002). Thereafter, the burden shifts back to the plaintiff to establish a genuine issue of material fact that the employer's asserted reason is pretextual. *Raggs*, 278 F.3d at 468. "'A plaintiff may show pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence.'" *Caldwell v. KHOU-TV*, 850 F.3d 237, 242 (5th Cir. 2017) (quoting *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir. 2010)).

---

[5] The district court found that Forbis "ha[d] not produced evidence that could reasonably be construed as direct evidence of discrimination." Likewise, Forbis does not produce any direct evidence of disparate treatment or retaliation on appeal. So, we, like the district court, will apply the *McDonnell Douglas* framework.

Assuming without deciding, as the district court did, that Forbis has made out prima facie cases of retaliation and disparate treatment[6] and that Exeter has offered a legitimate, nonretaliatory and nondiscriminatory reason for its actions, namely, his poor work performance, we conclude that Forbis has failed to raise a genuine issue of material fact that Exeter's reason was pretextual. First, Forbis cannot show disparate treatment. Second, he cannot show that Exeter's explanation is false or unworthy of credence. Ultimately, he cannot show that "but for" his complaint to human resources or Exeter's discriminatory animus based on his race and religion, he would not have been fired.

First, there is no evidence of disparate treatment. "To show disparate treatment, [Forbis] must identify such comparators and 'produce ... evidence that they were similarly situated employees.'" *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 827 (5th Cir. 2022) (quoting *Okoye v. Univ. of Tex. Hous. Health Sci. Ctr.*, 245 F.3d 507, 515 (5th Cir. 2001)) (alteration in original omitted). "The 'similarly situated' prong requires a Title VII claimant to identify at least one coworker outside of his protected class who was treated more favorably 'under nearly identical circumstances.'" *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 426 (5th Cir. 2017) (quoting *Lee v. Kan. City S. Ry.*, 574 F.3d 253, 259 (5th Cir. 2009)). "This coworker, known as a comparator,

---

[6] Although we follow the district court in assuming that Forbis has established a prima facie case of disparate treatment, we demonstrate in our pretext analysis that he does not. Because Forbis fails to identify a comparator, his disparate treatment claims fail at the prima facie stage. *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009) (observing that to prove a prima facie case of disparate treatment, "an employee must demonstrate that (1) he is a member of a protected class, (2) he was qualified for the position at issue, (3) he was the subject of an adverse employment action, and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances [*i.e.*, a comparator].").

must hold the 'same job' or hold the same job responsibilities as the Title VII claimant; must 'share the same supervisor or' have his 'employment status determined by the same person' as the Title VII claimant; and must have a history of 'violations' or 'infringements' similar to that of the Title VII claimant." *Id.* (alteration omitted).  Forbis proffers Zajac, who is white, as his comparator.[7]  He points to no evidence, however, to show that he and Zajac were similarly situated employees.  And at oral argument, Forbis could not cite record evidence supporting his conclusory allegation that the two were similarly situated.  We conclude that the two are not similarly situated due to their differences in job responsibilities.

According to Zajac, she would "take on the more manual and time-consuming reconciliations" and "Forbis agreed to take on the more repetitive and less time-consuming reconciliations," which would allow Forbis to accept special projects.  By taking on these projects, says Zajac, Forbis would have a better chance for promotion.  Zajac, nearing retirement, had no desire for a promotion.  Promotions were "earned by superior work performance and the ability to handle more responsibility," explained Forbis's supervisor, Brett Bradley.  When Forbis allegedly "expressed a desire [to Bradley] to be promoted and asked to be assigned projects that would allow him to demonstrate that he had what it took to be promoted,"

---

[7] Zajac would only be an alleged "comparator" as to Forbis's race-based claim of disparate treatment.  Although there is record evidence that Zajac and Forbis are both Christians, it is not clear if they are of the same sect or share the same beliefs.  As such, there is not enough evidence to support that Zajac would be a proper comparator as to Forbis's religious-based claim of disparate treatment.  *See Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 221 (5th Cir. 2001) (noting "[w]e have held 'that in order for a plaintiff to show disparate treatment, she must demonstrate that the misconduct for which she was discharged was nearly identical to that engaged in by a[n] employee [not within her protected class] whom [the company] retained.'") (alterations in original) (citation omitted).  Because a comparator is necessary to establish a prima facie case of disparate treatment, which Forbis does not identify, Forbis's religious-based claim necessarily fails.

Bradley assigned Forbis "a couple of work assignments that were more complex than those he usually worked on." So, "[i]f a new project or task was required in Brett Bradley's group, it was assigned to [Forbis] because Barb Zajac did not want the additional work" needed for a promotion.

Despite his and Zajac's agreement to the specific division of labor and allotment of special projects, Forbis complains that "Barbara Zajac was working on no projects and was performing only the daily assignments … [while Forbis] was performing [his] daily assignment comparable to the daily assignments to Zajac plus all of the additional projects." Yet, says Forbis, Zajac faced no adverse employment action for her failure to work on special projects, whereas Forbis purportedly was terminated, in part, for his failure to begin a critical project. But this difference in job responsibilities – namely, that Zajac worked on more manual and time-consuming reconciliations, not projects, and that Forbis worked on more repetitious and less time-consuming reconciliations and projects assigned to boost his chances at promotion – illustrates why Zajac is not a comparator as a matter of law. "[E]mployees who have different work responsibilities … are not similarly situated." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259-60 (5th Cir. 2009) (citing *Smith v. Wal–Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990)). Zajac and Forbis do not perform comparable work where: (1) Forbis, and Forbis only, would, by agreement, take on special projects to boost his chances for promotion; and (2) Zajac's work consisted of reconciliations that were a completely different character than those on which Forbis worked. Therefore, Zajac is not a proper comparator. Forbis's failure to raise a genuine issue of material fact as to disparate treatment causes his claim to fail at the pretext stage.

Second, there is no evidence that Exeter's reason – Forbis's unsatisfactory performance – is false or unworthy of credence. The record reflects numerous instances where Forbis made mistakes in calculating fees,

sent inaccurate emails to important third-party partners, and refused to follow company policies. It also reflects that Forbis failed to begin an important project and failed to keep his supervisor abreast of his nonperformance. Forbis's poor performance reviews and ultimate termination "was primarily driven by [Forbis] neglecting to assist with a critical Q3 asset sale project." In addition, "during Q4 multiple other material assignments were either missed or incorrect, resulting in a Q4 that [resulted] in an unacceptable Performance Review." And at one point, "it became clear to [Bradley and Bradley's supervisor, Miller] that Mr. Forbis did not understand how to do even the most basic of tasks required to complete the … project." Despite being "given continuous feedback by his direct manager about his daily production," Forbis "fail[ed] to integrate the development into his work product for the desired results needed to be successful in his role." As a result of Forbis's "ongoing performance deficiencies," Exeter terminated him.

Although Forbis contends that he performed satisfactorily during the last two quarters of his tenure, his self-serving statements are insufficient to create a triable issue of fact as to whether Exeter fired him because of his complaints to human recourses, his race, or his religion. *See Salazar v. Lubbock Cnty. Hosp. Dist.*, 982 F.3d 386, 389 (5th Cir. 2020). At this stringent pretext stage, a plaintiff "must do more than just dispute the underlying facts and argue that [the employer] made the wrong decision." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). And here, Forbis does not identify any evidence that would permit a reasonable inference that the real reason for his poor performance reviews and termination was impermissible retaliation or discrimination. *See Owens*, 33 F.4th at 834-35. Forbis cannot survive summary judgment merely because he disagrees with Exeter's stated reason: poor performance. *See Evans v. City of Houston*, 246

F.3d 344, 355 (5th Cir. 2001). The record does not support that Exeter's nonretaliatory and nondiscriminatory reason lacks veracity.

Third, as to Forbis's retaliation claim only, his identification of suspicious timing, one email praising a group of which Forbis was a part, and past satisfactory work performance[8] is not enough to support Forbis's claim that "but for" his complaints to human resources, he would not have been terminated. *See Owens*, 33 F.4th at 834-35. To be sure, we've "previously held that a 'combination of suspicious timing with other *significant* evidence of pretext can be sufficient to survive summary judgment in a Title VII retaliation action.'" *Saketkoo*, 31 F.4th at 1003 (emphasis added) (quoting *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999)). But we have also held that "[e]ven if a plaintiff's protected conduct is a substantial element in a defendant's adverse employment action, no liability for unlawful retaliation arises if the employee would have faced that discipline even without the protected conduct." *Wantou v. Wal-Mart Stores Tex.*, L.L.C., 23 F.4th 422, 437 (5th Cir. 2022). As discussed, the record is replete with instances of poor work performance that fortify Exeter's decision to terminate Forbis. Thus, Forbis cannot carry his summary-judgment burden.

In sum, Forbis does not present evidence showing that reasonable minds could disagree that his poor work performance was the reason for his discharge. He fails to raise a genuine issue of material fact that Exeter's nonretaliatory and nondiscriminatory reason was pretextual or that his protected activity (complaining to human resources) or characteristics (his

---

[8] That Forbis received satisfactory performance reviews in the past is insufficient because "'prior good evaluations alone cannot establish that later unsatisfactory evaluations are pretextual.'" *Salazar*, 982 F.3d at 389 (quoting *Billet v. CIGNA Corp.*, 940 F.2d 812, 826 (3d Cir. 1991)).

No. 22-10193

race or religion) were the true motives behind his termination.  Thus, we AFFIRM the district court's dismissal of Forbis's retaliation and disparate-treatment claims.

## IV.

Accordingly, the district court properly denied Forbis's motion for additional discovery and granted summary judgment for Exeter.  We AFFIRM.

No. 22-10193

JAMES E. GRAVES, JR., *Circuit Judge*, dissenting:

I disagree with the majority's conclusions in affirming the denial of George Forbis' Rule 56(d) motion for additional discovery and the grant of Exeter Finance, L.L.C.'s motion for summary judgment. Because I would vacate and remand, I respectfully dissent.

Rule 56(d) establishes safeguards for a nonmovant who shows that it is unable to present facts essential to its opposition to a motion for summary judgment. Fed. R. Civ. P. 56(d). Here, Forbis raised claims of retaliation and disparate treatment based on race and religion. After Exeter moved for summary judgment, Forbis timely filed a motion to compel and a Rule 56(d) motion for additional discovery. Both motions were filed months prior to the discovery deadline of January 17, 2022.

Forbis sought to compel the production of documents pursuant to Plaintiff's Third Request for Production and Inspection served on August 1, 2021, two months prior to the filing of Exeter's motion for summary judgment on October 2, 2021. Exeter objected to each request. Forbis asserts that Exeter also delayed and refused to produce other documents pursuant to his earlier requests for production. Forbis also sought additional discovery, including the "Barb" file and emails between himself and CFO Brad Nall over a two-year period.[1] Exeter did eventually provide the "George" file and some emails pertaining to agreed-upon search terms. But Exeter denied knowing whether the "Barb" file "even exists, or ever existed" or that it was relevant because it does not dispute that Zajac worked

---

[1] "Barb" pertains to Barbara Zajac, a white woman who held the same job title as Forbis.

14

on different things than Forbis.[2]  Relying on Zajac's declaration, Exeter said, "[t]his is not a disputed fact between the parties."  The majority now adopts Exeter's reasoning.

To prevail on his Rule 56(d) motion, Forbis (1) must show that additional discovery will create a genuine issue of material fact, and (2) that he diligently pursued discovery.  *Bailey v. KS Mgmt. Servs., L.L.C.*, 35 F.4th 397, 401 (5th Cir. 2022).  The district court found that Forbis did not diligently pursue discovery.  I disagree.  The majority says it is affirming on the basis that additional discovery would not create a genuine issue of fact, but it also reaches other conclusions.

The record here establishes that Forbis diligently pursued discovery throughout 2021, well before the discovery deadline of January 17, 2022.  The record also reflects that Exeter admitted in the Parties' Agreed Motion for Continuance and to Extend the Scheduling Order Deadlines filed on August 30, 2021 that both parties had diligently engaged in discovery.  The motion also said, "[t]he Parties cannot fully evaluate and prepare their respective cases, for summary judgment or trial, without having time to complete all outstanding discovery."  Further, that both parties "are seeking essential discovery which has been delayed due to extenuating circumstances exacerbated by, among other things, the COVID-19 pandemic."  The parties also moved "that the summary judgment, motions in limine, discovery deadlines, trial date, and corresponding pretrial deadlines be extended at least six months, to allow the Parties to be able to complete their discovery."  The district court granted the motion in part, allowing only a one-month extension for the filing of motions for summary judgment.

---

[2] Forbis indicated that both he and Zajac had such files.  If the "George" file existed, it seems likely that the "Barb" file also existed.

The majority cites *Jacked Up, L.L.C. v. Sara Lee Corporation*, 854 F.3d 797, 816 (5th Cir. 2017), as authority for its conclusion that Forbis is unable to demonstrate that additional discovery will create a genuine issue of fact. *Jacked Up* is distinguishable for multiple reasons, including that Jacked Up failed to submit an affidavit in support of its Rule 56(d) motion and failed to diligently pursue discovery.  There is also no indication that the parties agreed that they had been diligently conducting discovery and needed more time to complete it.  Additionally, the first part of the sentence from which the majority quotes reiterates that "Rule 56(d) motions for additional discovery are broadly favored and should be liberally granted."  *Id.*  The majority then later concludes that summary judgment was appropriate based on its analysis of the merits of the case without the evidence for which Forbis argues he needed additional discovery.

Summary judgment is appropriate only "as long as the plaintiff has had a full opportunity to conduct discovery."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).  "We repeat, however, that the plaintiff, to survive the defendant's motion, need only present evidence from which a jury *might* return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial."  *Id.* (emphasis added).  This court has also said:

> Although the district court may cut off discovery when the record shows that further discovery is not likely to produce the facts needed to withstand the motion for summary judgment, when a party is not given a full and fair opportunity to discover information essential to its opposition to summary judgment, the limitation on discovery is reversible error.

*Brown v. Miss. Valley State Univ.*, 311 F.3d 328, 333 (5th Cir. 2002)(internal marks and citations omitted).

Forbis asserts that, in his position as a senior treasury analyst, he was given extra work that Zajac, a white senior treasury analyst, was not required

to perform. The majority, relying on Exeter's version of the facts, makes multiple factual findings and concludes that Forbis fails to make a prima facie case of disparate treatment because Zajac is not a similarly-situated employee.[3]  In doing so, the majority says there is no dispute on this issue because Exeter concedes that Zajac did not perform the same duties as Forbis.  However, that in no way resolves the case.

Forbis asserts that Zajac refused to do the additional duties, and that he was treated differently because of race; not that he was just merely treated differently.  Exeter's admission that Forbis was treated differently does not establish why that was so or counter his claims of disparate treatment.  I further disagree with the majority's statement that Forbis was required to establish that he and Zajac "are of the same sect or share the same beliefs." Such proof has bearing on his claim for disparate treatment based on religion, but it has no bearing on his claim based on race, which is the only one the majority finds was properly raised on appeal.

Regardless, Forbis' statements regarding Zajac are certainly relevant to a claim of disparate treatment and, if true, would create a genuine issue of material fact.  I offer no opinion on whether Forbis would prevail on his

---

[3] Using circular logic, the majority concludes that Forbis "fails to identify a comparator" essentially because he is unable to provide the evidence to support his disparate treatment claim pertaining to Zajac.  But that evidence is the subject of his denied Rule 56(d) motion, which the majority says was properly denied because there is no genuine issue of material fact.  Confusingly, the majority later acknowledges that Forbis indeed identifies a comparator, saying, "Zajac would only be an alleged 'comparator' as to Forbis'[] race-based claim of disparate treatment."  Because it concludes that Forbis has failed to identify a comparator, the majority says that Forbis is unable to make a prima facie case of discrimination.  I disagree.  Under the *McDonnell Douglas* framework, as quoted by the majority, Forbis has clearly made a prima facie case.  To the extent the majority meant that Forbis made a prima facie case but then failed at the pretext step, I likewise disagree.  Moreover, there is no requirement that Forbis prove his claims beyond a reasonable doubt to establish a prima facie case or to avoid summary judgment, as discussed herein.

underlying claims or even whether he would have defeated summary judgment after obtaining the additional discovery.  But I am convinced that it was an abuse of discretion to deny additional discovery for purposes of granting summary judgment in this instance.  *See Anderson,* 477 U.S. at 257; *see also Brown*, 311 F.3d at 333.  That is particularly so when the record establishes that Exeter agreed Forbis had diligently conducted discovery and various factors necessitated more time.  Time that was denied by the district court.

For these reasons, I respectfully dissent.